UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

GE HEALTHCARE BIO-SCIENCES AB, GE
HEALTHCARE BIO-SCIENCES
CORPORATION, and GENERAL ELECTRIC
COMPANY,

                Plaintiffs,                No.  1:14-CV-07080-LTS-SN

                -v-

BIO-RAD LABORATORIES, INC.,

                Defendant.

-----------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Before the Court are the timely objections of Plaintiffs GE Healthcare Bio-Sciences AB, GE Healthcare Bio-Sciences Corporation, and General Electric Company (collectively "GE") to the August 14, 2015, Order of Magistrate Judge Sarah Netburn holding that Defendant Bio-Rad Laboratories, Inc. ("Bio-Rad"), need not produce information related to foreign sales of its allegedly infringing protein purification device in this patent infringement action.  (See Docket Entry No. 135, and Docket Entry No. 141, Plaintiff's Rule 72(A) Objections to the Magistrate Judge's August 14, 2015 Discovery Order ("GE Objections").)  For the reasons set forth below, GE's objections are sustained, and Bio-Rad is ordered to produce the foreign sales figures in question.

DISCUSSION

Background

GE has brought the underlying patent infringement action seeking damages and injunctive relief in light of the alleged infringement by Bio-Rad of U.S. Patent No. 8,821,718 (the "'718 Patent"). (See Docket Entry No. 72, Plaintiff's First Amended Complaint ("Amended Complaint") ¶ 1.) On August 14, 2015, a conference was held in order to resolve certain discovery disputes, including Bio-Rad's refusal to disclose documents related to foreign sales of the NGC device. (See Docket Entry No. 139, Transcript of 8/14/2015 Conference ("Trans.") 39:1-42:25.) After discussing the dispute in conference, Judge Netburn, to whom this case is assigned for general pretrial management, issued an order providing that Bio-Rad need not produce information related to foreign sales of the NGC machine (See Docket Entry No. 135), to which GE now objects.

Legal Standards

Section 636(b)(1)(A) of Title 28 of the U.S. Code authorizes a magistrate judge to hear and determine non-dispositive pretrial matters and further provides that, upon a timely objection, a district court judge "may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." See 28 U.S.C.S. § 636(b)(1)(A) (LexisNexis 2001). In this connection, Federal Rule of Civil Procedure 72(a) provides that, following a party's timely objection to a magistrate judge's order, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Relevance of Bio-Rad's Foreign Sales of Allegedly Infringing Device

GE seeks information relating to foreign sales of the NGC machine, which Bio-Rad admits it produces in the United States.  (See Docket Entry No. 147, Bio-Rad Laboratories, Inc.'s Response to Plaintiff's Rule 72(a) Objections to the Magistrate Judge's August 14, 2015 Discovery Order ("Bio-Rad Response"), p. 1.)  Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C.S. § 271(a) (LexisNexis 2000).  Federal Rule of Civil Procedure 26(b)(1) provides generally that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  Long-established Federal Circuit precedent recognizes that, when an allegedly infringing product is produced in the United States and subsequently sold by the manufacturer to foreign buyers, the foreign sales are relevant to the determination of damages suffered as a result of the domestic act of infringement.  See, e.g., Railroad Dynamics, Inc. v. A. Stuki Co., 727 F.2d 1506, 1509 (Fed. Cir. 1984) (sustaining damages award in form of royalties for foreign sales of infringing product produced in the United States).

Bio-Rad asserts that recent Federal Circuit jurisprudence, read in the context of a revitalized presumption against the extraterritorial application of U.S. patent law, precludes discovery concerning foreign sales of an allegedly infringing product.  Bio-Rad relies principally on the Federal Circuit's decision in Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc., which held that a trial court had properly rejected a claim for "full compensation" patent infringement damages that was based on the loss of sales in foreign markets.  See 711 F.3d 1348, 1372 (Fed. Cir. 2013).  In particular, Bio-Rad cites the Power Integrations Court's statement in

that case, which involved a relatively small number of infringing units that were manufactured in or imported into the United States and far greater sales of units neither produced nor sold in the United States, that "the entirely extraterritorial production, use or sale of an invention patented in the United States is an independent, intervening act that, under almost all circumstances, cuts off the chain of causation initiated by an act of domestic infringement." Id. at 1371-72.  Arguing that the use of the disjunctive "or" in this statement insulates entirely from scrutiny sales that are made abroad, even where the infringing device is manufactured in the United States, Bio-Rad asserts that the Federal Circuit has thus held that extraterritoriality concerns would be implicated by any other result.  The Power Integrations decision does not, however, go so far.

Even the Power Integrations Court recognized that the plaintiff there was properly entitled to recover damages for direct infringement based on the defendant's domestic manufacture, sale or importation of the accused devices.  The Court's opinion cites evidence as to the value of that domestic subset of the devices, without discussion of the basis on which the valuation figures were calculated.  In a later decision, Carnegie Mellon University v. Marvell Technology Group. Ltd., No. 2014-1492, 2015 WL 4639309 (Fed. Cir. 2015), the court upheld an instruction permitting a jury to "'consider' any sales that resulted from [domestic] infringing use in order to value that use," observing that "consideration of such sales was a sound part of determining the reasonable royalty for the infringing use" as long as at least the sale commitment was made in the United States, even if the manufacture, delivery and use of the items occurred entirely outside of the United States.  Id. at *23.  A 2013 Federal Circuit decision similarly rejected a lost profits claim based on foreign use of materials exported from the United States in violation of the Patent Act, but confirmed that the patentee was nonetheless entitled to compensation in the form of a reasonable royalty.  See WesternGeco L.L.C. v. ION Geophysical

Corp., 791 F.3d 1340, 1351 (Fed. Cir. 2013).  None of these decisions regarding the measure of damages for domestic infringement in the context of additional extraterritorial conduct addresses discovery regarding that conduct, and none holds the extraterritorial conduct entirely irrelevant to the determination of damages arising from infringement committed in the United States.  None of Bio-Rad's cited authorities demonstrates that discovery of foreign sales information – which is relevant to GE's claim for damages for allegedly infringing activities in the United States since it has, at a minimum, implications for the valuation of the invention – is precluded by the presumption against extraterritoriality.

Even if GE were only entitled to a "reasonable royalty for the use made of the invention by the infringer," 35 U.S.C.S. § 284 (LexisNexis 2000), the profits that Bio-Rad allegedly obtained from the sales to foreign customers would be relevant to the determination of a reasonable royalty.  Aqua Shield v. Inter Pool Cover Team, 774 F.3d 766, 770, 772 (Fed. Cir. 2014) (holding that, in context of determining reasonable royalty based on hypothetical negotiation between patentee and alleged infringer, "the infringer's actual profits earned during the period of infringement can be relevant to the inquiry") (citing Trans-World MFG Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552, 1568 (Fed. Cir. 1984)).  Under these circumstances, the denial of discovery concerning foreign sales was contrary to law.

<u>CONCLUSION</u>

For the foregoing reasons, GE's objections to Judge Netburn's August 14, 2015, Order are sustained, and Bio-Rad's objection to the underlying discovery request for foreign sales information is overruled.  Bio-Rad shall produce the foreign sales information sought by GE.  This case remains assigned to Judge Netburn for general pretrial management.

SO ORDERED.

Dated: New York, New York
        November 25, 2015

    /s/  Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge